[Cite as *State v. Sowell*, 2020-Ohio-2938.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                                          :

    Plaintiff-Appellee,                        :

                    No. 108018

v.                                                     :

ANTHONY E. SOWELL,                                     :

    Defendant-Appellant.                      :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 14, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-09-530885-A

---

### *Appearances:*

Mark A. Stanton, Cuyahoga County Public Defender, Jeffrey M. Gamso and Erika B. Cunliffe, Assistant Public Defenders, *for appellee.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christopher D. Schroeder, Assistant Prosecuting Attorney, *for appellant.*

EILEEN T. GALLAGHER, A.J.:

{¶ 1}     Defendant-appellant, Anthony E. Sowell, appeals from the judgment of the Cuyahoga County Court of Common Pleas denying his petition for postconviction relief. He raises the following assignments of error for review:

1.  The trial court erred when it concluded that grounds one through eleven of Sowell's petition for postconviction relief were barred by the doctrine of res judicata.

2.  Sowell's eleventh claim for relief, raising ineffective assistance of counsel due to co-counsel's lack of preparation and involvement, was supported by evidence outside the trial record and required an evidentiary hearing.

3.  The trial court erred when it rejected Sowell's third, fourth, and fifth claims for relief based on its mistaken belief that they challenged the state's determination to seek the death penalty in this case for improper reasons.

4.  The trial court erred in rejecting the eighth and ninth claims for relief based on the mistaken conclusion that mitigation evidence is only proper if it is a cause of a defendant's criminal behavior.

5.  The trial court erred in failing to allow discovery and the appropriation of funds for testing it had previously allowed but trial counsel failed to undertake.

6.  Sowell's claims for postconviction relief presented sufficient operative facts to merit relief or, at a minimum, an evidentiary hearing.

{¶ 2}    After careful review of the record and relevant case law, we find Sowell's petition for postconviction relief failed to set forth sufficient operative facts to establish substantive grounds for relief.  Accordingly, we affirm the trial court's judgment denying Sowell's petition for postconviction relief without a hearing.

## I. Procedural and Factual History

{¶ 3}    On October 28, 2009, a member of the Cleveland Police Department, investigating a rape complaint filed by L.B., obtained warrants to arrest Sowell and to search his home at 12205 Imperial Avenue in Cleveland.  When officers executed the search warrant the next evening, Sowell was not at home.  In a room on the third floor of the house, however, police found two decomposed female corpses lying on

the floor, that DNA analysis later confirmed were the bodies of Diane Turner and Telacia Fortson.

{¶ 4} Police obtained another warrant the next day and resumed searching Sowell's house, this time accompanied by personnel from the county coroner's office and a cadaver dog. They located a body beneath the basement staircase covered by a large mound of dirt and two more on the third floor, one inside a black plastic bag and one in a crawlspace concealed beneath more dirt. DNA analysis identified the body in the basement as Janice Webb, the body in the plastic bag as Nancy Cobbs, and the body in the crawlspace as Tishana Culver.

{¶ 5} In the backyard, the cadaver dog alerted to a spot near the back porch, where police located another body buried in a shallow grave. DNA analysis identified the body as Tonia Carmichael.

{¶ 6} The next day, on October 31, Sowell was seen on Mount Auburn Avenue by a member of the public who had recognized him from news broadcasts. Police were alerted and Sowell was arrested.

{¶ 7} On November 3, police obtained another search warrant for Sowell's residence and this time arranged for a backhoe to be brought to the property. They uncovered four more corpses and from DNA analysis eventually identified them as the bodies of Michelle Mason, Kim Smith, Amelda Hunter, and Crystal Dozier. In addition, a human skull, that DNA analysis eventually identified as belonging to Leshanda Long, was found in a black plastic bag inside a red bucket in the basement. No other parts of her body were located.

{¶ 8} Autopsy results showed that Culver had suffered a fractured hyoid bone in her neck, suggesting manual strangulation. Seven bodies — Carmichael, Cobbs, Dozier, Fortson, Hunter, Mason, and Webb — had ligatures around their necks, and the coroners concluded that their deaths had been caused by ligature strangulation. The coroners further concluded that Long, Smith, and Turner were killed by "homicidal violence" of "undetermined" type. Other evidence showed that six bodies — Carmichael, Cobbs, Culver, Dozier, Smith, and Webb — had bindings, or the remains of bindings, around their wrists and/or ankles.

{¶ 9} Following the investigation, a grand jury returned an 85-count indictment against Sowell. Counts 1 through 66 dealt with the 11 murder victims. Regarding each victim, the grand jury indicted Sowell on two counts of aggravated murder: one for prior calculation and design, R.C. 2903.01(A), and one for felony murder, R.C. 2903.01(B), predicated on kidnapping.

{¶ 10} Each aggravated-murder count carried 15 death-penalty specifications. Two felony-murder specifications pursuant to R.C. 2929.04(A)(7) were attached to each count — the first was predicated on kidnapping to terrorize or inflict serious physical harm on the victim, and the second was predicated on kidnapping to engage in sexual activity with the victim against the victim's will.

{¶ 11} In addition, each aggravated-murder count had 13 course-of-conduct specifications pursuant to R.C. 2929.04(A)(5), alleging that the murder was part of a course of conduct involving the purposeful killing of or attempt to kill two or more

victims. Each course-of-conduct specification cited one of the other murders or attempted murders in this case as part of the course of conduct engaged in by Sowell.

{¶ 12} Each aggravated-murder count and most of the noncapital counts also included a sexual-motivation specification pursuant to R.C. 2941.147, a sexually violent predator specification pursuant to R.C. 2941.148, a repeat-violent-offender specification pursuant to R.C. 2941.149, and a prior-conviction specification reflecting a prior conviction of attempted rape.

{¶ 13} With respect to each murder victim, the indictment charged two counts of kidnapping: one under R.C. 2905.01(A)(3) (having a purpose to terrorize or to inflict serious physical harm) and another under R.C. 2905.01(A)(4) (having a purpose to engage in sexual activity with the victim against the victim's will). Finally, the indictment charged one count of abuse of a corpse and one count of tampering with evidence with respect to each aggravated murder victim.

{¶ 14} Counts 67 to 85 charged Sowell with crimes against L.B., S.M., and G.W., each of whom survived their encounters with Sowell. As to these victims, whom the state identified as Jane Does in the original indictment, Sowell was charged with two counts of kidnapping, pursuant to R.C. 2905.01(A)(3) and (A)(4), and one count of attempted murder, pursuant to R.C. 2923.02 and 2903.02(A). Sowell was also charged with two counts of rape committed against both L.B. and S.M. and one count of attempted rape committed against G.W. In addition, Sowell was charged with two counts of felonious assault pertaining to L.B. and one count

each with regard to S.M. and G.W.  Finally, he was indicted for one count of the aggravated robbery of G.W.

{¶ 15}  The matter proceeded to trial on June 26, 2011.  After the state's presentation of evidence during the guilt phase of the trial, the defense moved for acquittal.  The trial court granted the motion as to Counts 38, 39, and 40 (felony-murder and kidnapping of Long) and specifications 1, 2, and 16 (felony murder and sexual-motivation specifications) to Count 37 (aggravated murder of Long with prior calculation and design).

{¶ 16}  The defense did not call any witnesses in its case-in-chief, but it submitted a number of exhibits into evidence before it rested.  The jury returned verdicts finding Sowell not guilty of Count 85 (aggravated robbery of G.W.) but guilty of all other counts and specifications.

{¶ 17}  Prior to the penalty phase of trial, the trial court merged the aggravated-murder counts for sentencing purposes.  The state elected to proceed under R.C. 2903.01(A), and thus, the jury considered 11 counts of aggravated murder.  Pursuant to the state's election, the counts based on R.C. 2903.01(B) were not submitted to the jury during the penalty phase of the trial.

{¶ 18}  The penalty phase of trial began on August 1, 2011.  At the conclusion of its penalty-phase deliberations, the jury unanimously recommended death sentences for each of the 11 aggravated murders.  The trial court accepted the recommendations and sentenced Sowell to death on each of the 11 counts.

**{¶ 19}** Sowell appealed from his capital convictions and sentences of death to the Ohio Supreme Court as a matter of right pursuant to Article IV, Section 2(B)(2)(c), of the Ohio Constitution. On December 8, 2016, the Ohio Supreme Court affirmed Sowell's convictions and death sentences. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, ¶ 131, *cert. denied*, *Sowell v. Ohio*, ___U.S.___, 138 S.Ct. 101, 199 L.Ed.2d 63 (2017).

**{¶ 20}** On August 13, 2012,[1] Sowell filed a petition for postconviction relief pursuant to R.C. 2953.21. In the petition, Sowell raised the following grounds for relief:

> 1. Petitioner's conviction and death sentence are void or voidable because the trial court erred when it denied his repeated motions for a change of venue, despite the fact that there was an overwhelming amount of publicity surrounding the crimes.
>
> 2. Petitioner's conviction and death sentence are void or voidable because he received, and was prejudiced by, ineffective assistance of counsel. Trial counsel were ineffective because they failed to attach relevant evidence to their amended motions for change of venue.
>
> 3. Petitioner's conviction and death sentence are void or voidable because the death penalty is being selected, administered, and carried out in an arbitrary, capricious, and discriminatory manner in Cuyahoga County.
>
> 4. Petitioner's conviction and death sentence are void or voidable because his trial attorneys failed to argue and present evidence that the death penalty is applied in an arbitrary manner by prosecutors motivated by bias within the confines of a broken criminal justice system in Cuyahoga County.

---

[1] The postconviction proceedings were held in abeyance pending the Ohio Supreme Court's resolution of Sowell's direct appeal.

5.   Petitioner's conviction and death sentence are void or voidable because the death penalty law in Ohio is being abused in Cuyahoga County, resulting in arbitrary, capricious, and discriminatory application of death as punishment.

6.   Petitioner's conviction and death sentence are void or voidable because his trial attorneys failed to present evidence that the death penalty law of Ohio is being abused within the jurisdiction of Cuyahoga County.

7.   Petitioner's constitutional rights to due process and a fair trial were violated when the trial court allowed the state to impeach a defense witness without proper grounds.

8.   Petitioner's conviction and death sentence are void or voidable because he received, and was prejudiced by, ineffective assistance of counsel.   Counsel were ineffective because they failed to obtain a positron emission tomography ("PET") scan.

9.   Petitioner's sentences are void or voidable because he was denied effective assistance of counsel at the penalty phase of his capital trial by failing to hire a forensic psychologist with expertise in mitigation evaluations.

10.  The death sentence imposed on petitioner is void or voidable because he did not receive the effective assistance of counsel during the penalty phase of his capital trial.   Trial counsel's failure to retain appropriate experts and properly supervise them led to a failure to investigate and a failure to present available, relevant, and compelling mitigating evidence to the jury, which prejudiced petitioner.

11.  Petitioner's judgment and sentence are void or voidable because he was denied effective assistance of counsel during his capital trial due to co-counsel's lack of involvement and preparation.

12.  Petitioner's conviction and death sentence are void or voidable because the trial court judge failed to recuse himself after he organized a social event prior to the conclusion of petitioner's case denying petitioner due process and a fair trial.

13.  Petitioner's conviction and death sentence are void or voidable because Ohio's postconviction procedures do not provide an adequate corrective process, in violation of the Constitution.

14. Petitioner's judgment and sentence are void or voidable because, assuming arguendo that none of the grounds for relief in his postconviction petition individually warrant the relief sought from this court, the cumulative effects of the errors and omissions presented in the petition have been prejudicial and denied petitioner rights secured by the United States Constitution and Ohio Constitution.

{¶ 21} On November 26, 2018, the trial court issued findings of fact and conclusions of law denying Sowell's petition for postconviction relief without a hearing. The trial court held, in relevant part:

Defendant's first ground of relief — that the trial court erred when it denied Sowell's repeated motions for a change of venue — is barred by res judicata and is otherwise not supported.

* * *

Defendant's second, fourth, sixth, eighth, ninth, tenth, and eleventh grounds for relief — that he received ineffective assistance of trial counsel — fail to satisfy the test set forth in *Strickland v. Washington*, [466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] are substantially without merit, and additionally are barred by res judicata.

* * *

Defendant's third and fifth grounds for relief — that the death penalty is being selected, administered, and carried out in an arbitrary, capricious, or discriminatory manner in Cuyahoga County and that the death penalty law of Ohio is being abused in Cuyahoga County, resulting in the arbitrary, capricious, and discriminatory application of death as punishment — is barred by res judicata and is otherwise unsupported.
* * *

Defendant's seventh ground for relief — that defendant's rights to due process and a fair trial were violated when the trial court allowed the state to impeach a defense witness without proper grounds * * * is barred by res judicata * * *. In addition, were this claim not barred by res judicata, it * * * was harmless.

* * *

Defendant's twelfth ground for relief — that defendant's right to a fair trial was violated because the trial court judge failed to recuse himself after organizing a social event prior to the conclusion of defendant's case — is improper and not supported with any facts.

* * *

Defendant's thirteenth ground for relief — that Ohio's postconviction procedures do not provide an adequate corrective process, in violation of the constitution — is without merit and is denied.

* * *

In this case * * * there were no instances of error and therefore this Court cannot apply cumulative error to grant defendant the relief he seeks.

{¶ 22} Sowell now appeals from the trial court's judgment.[2]

## II.  Law and Analysis

{¶ 23} Collectively, Sowell's first, second, third, fourth, fifth, and sixth assignments of error challenge the trial court's denial of his petition for postconviction relief without a hearing.  For the purposes of this appeal, we address Sowell's assignments of error out of order when appropriate.

## A.  Standard of Review

{¶ 24} Postconviction relief is governed by R.C. 2953.21, which provides in relevant part as follows:

> (A)(1)(a) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * *, may

---

[2] The appeal does not challenge the trial court's resolution of Sowell's twelfth and fourteenth grounds for relief.

file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

* * *

(D) Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * *

* * *

(F) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending.

* * *

{¶ 25} The postconviction relief process is a civil collateral attack on a criminal judgment, in which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting the issues is not contained in the record of the petitioner's criminal conviction. *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999); *State v. Carter*, 10th Dist. Franklin No. 13AP-4, 2013-Ohio-4058, ¶ 15. Postconviction review is not a constitutional right but, rather, is a narrow remedy that affords a petitioner no rights beyond those granted by statute. *Id.* at 281-282. A postconviction relief petition does

not provide a petitioner a second opportunity to litigate his or her conviction. *State v. Hessler*, 10th Dist. Franklin No. 01AP-1011, 2002-Ohio-3321, ¶ 32.

{¶ 26} A petitioner is not automatically entitled to an evidentiary hearing on a petition for postconviction relief. *State v. Jackson*, 64 Ohio St.2d 107, 110-113, 413 N.E.2d 819 (1980). Rather, to warrant an evidentiary hearing on a petition for postconviction relief, a petitioner bears the initial burden of providing evidence that demonstrates a cognizable claim of constitutional error. R.C. 2953.21(D); *Hessler* at ¶ 33.

{¶ 27} Thus, a trial court has a statutorily imposed duty to ensure a defendant presents evidence sufficient to warrant a hearing. *State v. Cole*, 2 Ohio St.3d 112, 113, 443 N.E.2d 169 (1982). The evidence must show "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." R.C. 2953.21(A)(1)(a); *Calhoun* at 282-283. Pursuant to R.C. 2953.21(D), a defendant's petition for postconviction relief may be denied by a trial court without holding an evidentiary hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that the petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Id.* at paragraph two of the syllabus. When making such a determination, a trial court has the discretion to weigh the credibility of any affidavits submitted with the petition. *Id.* at 284. In doing so, the trial court should consider the following relevant factors:

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony.

*Id.* at 285, citing *State v. Moore*, 99 Ohio App.3d 748, 754-756, 651 N.E.2d 1319 (1st Dist.1994). "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility." *Id.*

{¶ 28} We review the trial court's ruling on a postconviction petition for an abuse of discretion. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 45. An abuse of discretion connotes more than an error of law or judgment, it entails a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

## B. Application of Res Judicata – Ground Nos. 1-11

{¶ 29} In his first assignment of error, Sowell argues the trial court erred when it concluded that grounds 1-11 of his petition for postconviction relief were barred by the doctrine of res judicata.

{¶ 30} A petition for postconviction relief may be dismissed without an evidentiary hearing when the claims raised are barred by the doctrine of res judicata.

*State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraphs seven, eight, and nine of the syllabus. Under the doctrine of res judicata,

> a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal of that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction, or on an appeal from that judgment.

*Id.* at paragraph nine of the syllabus. Thus, issues properly raised in a petition for postconviction relief are those that could not have been raised on direct appeal because the evidence supporting such issues is outside the record. *State v. Dowell*, 8th Dist. Cuyahoga No. 86232, 2006-Ohio-110, ¶ 10, citing *State v. Durr*, 8th Dist. Cuyahoga No. 65958, 1994 Ohio App. LEXIS 3758 (Aug. 25, 1994). If an issue was, or could have been raised on direct appeal, the trial court may dismiss the petition on the basis of res judicata*. State v. Cody*, 8th Dist. Cuyahoga No. 102213, 2015-Ohio-2764, ¶ 16, citing *State v. Tucker*, 8th Dist. Cuyahoga No. 84595, 2005-Ohio-109, ¶ 11, citing *State v. Edwards*, 8th Dist. Cuyahoga No. 73915, 1999 Ohio App. LEXIS 894 (Mar. 11, 1999).

{¶ 31} Generally, "the introduction of evidence in an R.C. 2953.21 petition outside the record is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of res judicata." *Cole*, 2 Ohio St.3d at 114, 443 N.E.2d 169. However, the evidence submitted in support of the petition "must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally

significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." *State v. Lawson*, 103 Ohio App.3d 307, 659 N.E.2d 362 (12th Dist.1995), quoting *State v. Coleman*, 1st Dist. Hamilton No. C-900811, 1993 Ohio App. LEXIS 1485, 21 (Mar. 17, 1993). "The evidence submitted with the petition must be competent, relevant, and material and not merely cumulative of or alternative to evidence presented at trial." *State v. Jackson*, 8th Dist. Cuyahoga No. 104132, 2017-Ohio-2651, ¶ 16, citing *State v. Combs*, 100 Ohio App.3d 90, 98, 652 N.E.2d 205 (1st Dist.1994).

{¶ 32} With the foregoing principles in mind, we now address grounds 1-11 of Sowell's petition for postconviction relief.

### 1. Change of Venue — Ground Nos. 1 and 2

{¶ 33} In his first ground for relief, Sowell argues the trial court deprived him of the constitutional right to a fair trial by an impartial jury "when it denied the repeated motions for a change of venue, despite the fact that there was an overwhelming amount of publicity surrounding the crimes."

{¶ 34} In this case, Sowell filed a motion for change of venue based on adverse pretrial publicity on January 27, 2010. The motion included an appendix containing 161 pages of various news article that intended to show the extent of the media coverage. The trial court denied the motion on January 29, 2010. Subsequently, Sowell filed an amended motion for change of venue based on adverse pretrial publicity. On June 2, 2010, the trial court denied the amended motion. However, the court stated that it would reconsider Sowell's motion "should it be

determined during voir dire that it would be impossible for the defendant to receive a fair trial in Cuyahoga County." Sowell filed a second amended motion for change of venue on May 16, 2011. Again, the trial court stated that it would reserve judgment until the commencement of voir dire. At the conclusion of individual voir dire, Sowell orally renewed his motion for change of venue. (Tr. 5168.) Upon consideration, the trial court denied the request, stating:

> Again, and in response to that, I'll just state, even though the jurors did indicate a knowledge of this case through media sources, those that were passed through that will be part of the general voir dire all have certainly expressed the view to the Court that they would be able to put that knowledge aside, afford the defendant the presumption of innocence to which he is entitled and decide this case based solely on the evidence submitted in this courtroom.

(Tr. 5168.)

{¶ 35} In his direct appeal before the Ohio Supreme Court, Sowell's first proposition of law argued "that prejudicial pretrial publicity denied him a fair trial, that the publicity was so pervasive that the trial court should have presumed prejudice, and that the court erred by denying his requests for a change of venue." *Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, at ¶ 54. Ultimately, the Ohio Supreme Court determined that the trial court did not abuse its discretion in denying Sowell's motions for change of venue. The court found "the publicity prior to Sowell's trial was not so pervasive that Sowell was denied a fair trial." *Id.* at ¶ 57-60.

{¶ 36} Sowell now reiterates the arguments previously raised on direct appeal. In support of his first ground of relief, Sowell attached approximately 149

additional news articles that were issued after the initial change of venue motion was filed in January 2010. Sowell contends that the additional news articles demonstrate the alleged prejudicial scope of the adverse publicity and media coverage in his case.

{¶ 37} After careful review, we find the doctrine of res judicata bars Sowell's attempt to relitigate the merits of the trial court's judgment under the first ground for relief. As stated, Sowell explicitly argued on direct appeal that the trial court erred by overruling his motion to change venue. The Ohio Supreme Court unambiguously rejected Sowell's claim, and Sowell's inclusion of additional media reports does not negate the application of res judicata in this instance. Unquestionably, the substance of the articles attached to Sowell's petition for postconviction relief were merely cumulative to the articles that were originally attached to his motion to vacate before the trial court. In addition, the majority of the additional news articles were available to defense counsel at the time of trial and, therefore, could have been submitted in support of the renewed motion for a change of venue. *See State v. McKnight*, 4th Dist. Vinton No. 07CA665, 2008-Ohio-2435, ¶ 26, citing *State v. Campbell*, 10th Dist. Franklin No. 03AP-147, 2003-Ohio-6305, ¶ 18 (noting that petitioner submitted over 50 newspaper articles published about the crime before his trial in attempt to overcome res judicata bar); *State v. Palmer*, 7th Dist. Belmont No. 96BA70, 1999 Ohio App. LEXIS 4986, 17 (Oct. 20, 1999) (concluding that res judicata barred pretrial publicity claim when newspaper articles

were available at time of trial). The additional evidence, therefore, failed to meet the "threshold standard of cogency."

{¶ 38} Relatedly, Sowell argues in his second ground for relief that defense counsel rendered ineffective assistance of counsel by failing to attach the additional media reports in support of the amended motions for change of venue. Sowell argues that the additional articles would have demonstrated to the court that the "pervasive nature of the pretrial publicity" did not end after the first amended change-of-venue motion was filed. In Sowell's view, a comprehensive understanding of the prejudicial media coverage was necessary and that "had trial counsel acted competently, the trial court would have granted his motion for change of venue."

{¶ 39} In finding Sowell's ineffective assistance of counsel claim to be without merit, the trial court applied the doctrine of res judicata because the issue of venue was raised in Sowell's direct appeal. Alternatively, the trial court found that the evidence attached in support of the second ground for relief did not establish a valid ineffective assistance of counsel claim, stating:

> In light of the court's repeated denials of defendant's requests to change venue, any additional or supplemental motion for change of venue by defendant had little, if any, chance of success. The court reserved any final decision on a change of venue until after voir dire began. When it determined, after an extensive and time consuming voir dire, that it was possible to seat a panel of jurors from the venire summoned on this case, and that those jurors did not express any actual bias, the court declined to modify its prior rulings on defendant's successive motions for change of venue. Any further motions for change of venue, regardless of how many articles were included, would have been denied on this same basis. Therefore, defendant cannot show that his trial counsel was deficient for not including additional articles in his [motion for change of venue].

**{¶ 40}** To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Prejudice is established if the defendant proves the existence of a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Bradley* at 143. In evaluating a claim of ineffective assistance of counsel, a court must give great deference to counsel's performance. *Strickland* at 689. "A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69.

**{¶ 41}** To be entitled to a hearing on an ineffective assistance of counsel claim in a petition for postconviction relief, the petitioner bears the initial burden of submitting evidentiary materials containing sufficient operative facts which, if believed, would establish defense counsel had substantially violated at least one of a defense attorney's essential duties to his client and that the defendant was prejudiced as a result. *Cole,* 2 Ohio St.3d at 114, 443 N.E.2d 169; *Jackson,* 64 Ohio St.2d 107, 413 N.E.2d 819, at syllabus. "Generally, where evidence dehors the record 'is merely cumulative to that presented at trial,' it is not sufficient to establish ineffective assistance of counsel." *State v. Frazier*, 6th Dist. Lucas No. L-07-1388, 2008-Ohio-5027, ¶ 57, quoting *State v. Smith*, 6th Dist. Lucas No. L-99-1310, 2001

Ohio App. LEXIS 665 (Feb. 23, 2001), citing *State v. Powell*, 90 Ohio App.3d 260, 270, 629 N.E.2d 13 (1st Dist.1993).

{¶ 42} "[I]neffective assistance of counsel ordinarily should be raised on direct appeal." *State v. Jones*, 8th Dist. Cuyahoga No. 83601, 2004-Ohio-3868, ¶ 6. However, "when allegations of ineffective assistance of counsel hinge on facts not appearing in the record, the proper remedy is a petition for postconviction relief rather than direct appeal." *State v. Curtis*, 8th Dist. Cuyahoga No. 89412, 2008-Ohio-916, ¶ 8. In contrast, a trial court properly dismisses a petition for postconviction relief based on res judicata when the defendant, "represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence de hors the record[.]" *Cole* at syllabus.

{¶ 43} In this instance, Sowell's ineffective assistance of counsel claim hinges on materials that are not part of the trial record. Nevertheless, without addressing the trial court's discussion of res judicata, we find the trial court did not err in determining that the evidence attached in support of the second ground for relief does not satisfy the requirements of *Strickland*. Defense counsel had previously, yet unsuccessfully, argued the merits of the motion for change of venue and submitted hundreds of news articles in support of counsel's claim of prejudicial pretrial publicity. Ohio courts have routinely held that defense counsel's failure to include every piece of publicity surrounding a case does not amount to ineffective assistance of counsel when the trial court is well aware of the level of publicity.

*McKnight*, 4th Dist. Vinton No. 07CA665, 2008-Ohio-2435, at ¶ 31, citing *State v. Moreland,* 2d Dist. Montgomery No. 17557, 2000 Ohio App. LEXIS 14, 21 (Jan. 7, 2000). In this case, the trial court was well aware of the extent of pretrial publicity, but ultimately determined that a fair trial was possible pursuant to the jurors' responses during voir dire. As discussed, the substance of the additional news articles was merely cumulative to those articles already presented to the trial court. Under these circumstances, we find counsel's failure to include the additional news articles in its motion to change venue did not prejudice Sowell.

{¶ 44} Based on the foregoing, we are unable to conclude that the trial court abused its discretion in denying Sowell's first and second grounds for relief without a hearing.

## 2. Constitutionality of the Death Penalty in Cuyahoga County – Ground Nos. 3 and 5

{¶ 45} In his third ground for relief, Sowell argues the death penalty is being selected, administered, and carried out in an arbitrary, capricious, and discriminatory manner in Cuyahoga County. Sowell asserts that the unfair application of the death penalty in this county "stems from a criminal justice system fraught with inefficiency and a practice of uncontrolled discretion afforded to the Cuyahoga County prosecutor."

{¶ 46} Similarly, Sowell's fifth ground for relief argues the death penalty is "being abused in Cuyahoga County," stating that "the wide discrepancy in capital sentencing between races in Cuyahoga County demonstrates the discriminatory manner in which the system is operating" and "shows that the race of the defendant

plays a clear role in a prosecutor's determination of whether or not to seek a penalty of death."

{¶ 47} In support of the third and fifth grounds for relief, Sowell attached petitioner's Exhibit B, which purports to be a list of all capital sentences imposed in Ohio from 1981 to the time of Sowell's sentence. The statistical chart sets forth (1) the name of the defendant, (2) the defendant's race, (3) the victim's race, (4) the county of venue, (5) the date of the capital sentence, and (6) the status of the case. According to Sowell, the data reflects that "since 1982, less than 10 percent of the death sentences handed down in Cuyahoga County have actually resulted in the execution of the sentenced defendant." Sowell further suggests that the data shows that "68 percent of those sentenced to death [in Cuyahoga County] have been African-American or non-white."

{¶ 48} In its findings of fact and conclusions of law, the trial court considered the third and fifth grounds for relief together. Ultimately, the trial court found the grounds are barred by res judicata, as "the validity and operation of the death penalty in Cuyahoga County was capable of being raised on direct appeal and, in fact, was raised by defendant in his appeal." In addition, the trial court determined that petitioner's Exhibit B failed to set forth operative facts to establish substantive grounds for relief because it contained "an insufficient sampling of the total pool of capital defendants in Cuyahoga County." The court further noted that the Sowell case involved "one of the worst, if not the worst, capital murder cases in the State of

Ohio" and, therefore, was not selected, administered, carried out, or abused by Cuyahoga County "in this case."

{¶ 49} In Sowell's direct appeal, the Ohio Supreme Court overruled various constitutional challenges to Ohio's death penalty statute. *Sowell,* 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, at ¶ 149-152. In particular, the Ohio Supreme Court conducted a proportionality review of Sowell's sentence, and rejected his position that Ohio's death penalty statute allows for the imposition of the death penalty in an arbitrary and discriminatory manner. *Id.* Sowell now attempts to relitigate his constitutional claims by narrowing his argument to the application of the death penalty in Cuyahoga County. We are unpersuaded. The statistical data submitted in support of his claims sets forth information relating to all capital punishment cases in Ohio since 1981. Such statistical data was available to Sowell at the time of trial and his direct appeal. Under nearly identical circumstances, Ohio courts have applied the doctrine of res judicata to analogous constitutional challenges to the death penalty in a postconviction petition. *See State v. Hale*, 8th Dist. Cuyahoga No. 103654, 2016-Ohio-5837, ¶ 42-45; *State v. Foust*, 8th Dist. Cuyahoga No. 83771, 2005-Ohio-5331, ¶ 20 (Statistical evidence of the death penalty in Cuyahoga County "was available to [the petitioner] at the time of his direct appeal and accordingly, this claim is barred by res judicata."); *Frazier*, 6th Dist. Lucas No. L-07-1388, 2008-Ohio-5027, ¶ 68 (Applying res judicata to claim that the death penalty is arbitrarily and discriminatorily applied in Lucas County, Ohio); *State v. Lynch*, 1st Dist. Hamilton No. C-010209, 2001 Ohio App. LEXIS 5765, 9

(Dec. 21, 2001) (applying res judicata to claim that the death penalty is arbitrarily applied in Hamilton County, Ohio); *State v. Jones*, 1st Dist. Hamilton No. C-990813, 2000 Ohio App. LEXIS 6197, 8 (Dec. 29, 2000) (applying res judicata to claim that the death penalty is arbitrarily applied in Hamilton County, Ohio).

{¶ 50} Nevertheless, even if this court were to accept Sowell's position that res judicata does not apply because his claims rely on statistical data dehors the record, we find his claims are without merit.

{¶ 51} Regarding Sowell's contention that the death penalty is arbitrarily applied in Cuyahoga County, the Ohio Supreme Court has previously rejected the argument that the death penalty is unconstitutional because it is applied at the discretion of prosecutors. *State v. Jenkins*, 15 Ohio St.3d 164, 169-170, 473 N.E.2d 264 (1984). The rationale for this position is that, "'[a]bsent facts to the contrary, it cannot be assumed that prosecutors will be motivated in their charging decision by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts.'" *Id.* at 169, quoting *Gregg v. Georgia*, 428 U.S. 153, 225, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). To conclude otherwise would represent "an indictment of our entire criminal justice system which must be constitutionally rejected." *Id.* at 170.

{¶ 52} Similarly, the Ohio Supreme Court "has repeatedly held that Ohio's death-penalty procedures are not unconstitutional or imposed in a racially discriminatory manner." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 120. In addition, both the United States Supreme Court and the

Supreme Court of Ohio have declined to accept statistics that purport to show a racial disparity in the imposition of the death penalty as grounds for finding the death penalty to be unconstitutional. *McClesky v. Kemp*, 481 U.S. 279, 294, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *State v. Steffen* 31 Ohio St.3d 111, 124, 509 N.E.2d 383 (1987). Rather than make a general showing of disparity, a defendant "must show that racial considerations affected the sentencing process in his case" for equal protection to be implicated. *Steffen* at *id*. *See also McClesky* at 292.

{¶ 53} While Sowell has submitted statistical information relating to the application of the death penalty in Ohio and Cuyahoga County, he has presented no evidence to demonstrate that the death penalty was applied in an arbitrary or discriminatory manner *in his case*. Accordingly, we are unable to conclude that the trial court abused its discretion in denying Sowell's third and fifth grounds for relief without a hearing.

### 3. Ineffective Assistance of Counsel and the Death Penalty in Cuyahoga County – Ground Nos. 4 and 6

{¶ 54} In his fourth and sixth grounds for relief, Sowell argues defense counsel rendered ineffective assistance of counsel by failing to present evidence that the death penalty is being abused and applied in an arbitrary and discriminatory manner in Cuyahoga County. Sowell contends that counsel's failure to research and present available statistical data fell below the *Strickland* standard of effectiveness and was prejudicial. Again, Sowell's fourth and sixth grounds for relief relies on the statistical data contained in petitioner's Exhibit B.

{¶ 55} In rejecting these grounds for relief, the trial court found Sowell's ineffective assistance of counsel claims were barred by res judicata to the extent arguments concerning the constitutionality of the death penalty in Ohio had been raised and rejected in Sowell's direct appeal. Alternatively, the trial court determined that the statistical data submitted in support of the ineffective assistance of counsel claims failed to set forth sufficient operative facts, stating:

> Defendant's [E]xhibit B purports to demonstrate the corruptness of the Cuyahoga County criminal justice system by analyzing the number of death sentences that have been reversed by a higher court since 1982. The record attached by defendant appears to list 328 cases where the defendant was sentenced to death. In 66 of those cases the jurisdiction was Cuyahoga County. According to defendant, 53% of those cases have been reversed by a higher court. Defendant points to no other facts, other than this statistic, to conclude that the criminal justice system in Cuyahoga County is therefore corrupt and that the death penalty is applied in an arbitrary manner. Cases are affirmed, reversed and/or modified on appeal for multiple reasons. Without considering the facts and applicable law to each case, it is difficult to make a general assertion about all cases and why they were reversed on appeal.

{¶ 56} Moreover, the trial court noted that defense counsel had, in fact, filed a motion to dismiss the death penalty specification on grounds that "the imposition of the death penalty is arbitrary in this county, in this state and in this country." The motion was denied on November 10, 2010.

{¶ 57} Without applying res judicata to the instant ineffective assistance of counsel claims, we find the statistical data set forth in petitioner's Exhibit B failed to prove that the actions of defense counsel fell below an objective standard of reasonable representation and that Sowell was prejudiced by such action. While the evidence sets forth certain relevant statistics relating to the death penalty in

Cuyahoga County, the statistical evidence, standing alone, is insufficient to infer that the death penalty statute is arbitrarily or discriminatorily applied systematically or in this particular case. *See State v. Keene*, 81 Ohio St.3d 646, 652, 693 N.E.2d 246 (1998). Moreover, we agree with the trial court that the statistical data submitted by Sowell lacks context and is not persuasive evidence of a constitutional violation.

{¶ 58} Notwithstanding our conclusion that the trial court properly resolved Sowell's third, fourth, fifth, and sixth grounds for relief, Sowell argues in his third assignment of error that the plain language of the court's decision demonstrates that the court did not fully comprehend his constitutional challenges to the application of the death penalty in Cuyahoga County. Sowell contends that the trial court mistakenly focused on the application of the death penalty in his specific case, rather than addressing his broader arguments concerning "the systemic flaws in the capital punishment system in Cuyahoga County."

{¶ 59} Here, the trial court's resolution of Sowell's third, fourth, fifth, and sixth grounds for relief briefly referenced the appropriateness of the death penalty under the particular facts of this case, stating that Sowell's case was one of the "worst of the worst" capital cases in the history of this state. The trial court further noted that statistical data attached to Sowell's petition failed to demonstrate that the prosecutor in this case acted with a discriminatory purpose. While Sowell contends that the court's analysis failed to focus on the "systemic flaws" in Cuyahoga County itself, we are unable to conclude that the trial court's resolution of the assigned

grounds for relief suggests that the trial court misunderstood the specific nature of Sowell's constitutional claims.

{¶ 60} In short, the trial court's discussion of the state's application of the death penalty to the circumstances of Sowell's particular case was not only appropriate, but necessary. As discussed, a constitutional challenge to the administration of the death penalty must address the considerations that affected the sentencing process in a defendant's individual case. Regarding Sowell's contention that Cuyahoga County prosecutors have unfettered discretion, the Ohio Supreme Court has rejected similar constitutional arguments, explaining that, absent specific facts to the contrary, there is an assumption that a prosecutor's discretion will be motivated by particular facts at issue *in that case*. *See Jenkins*, 15 Ohio St.3d at 169-170, 473 N.E.2d 264. And, as previously stated, the Ohio Supreme Court has held that in order to sustain an equal protection claim in a capital punishment case, a "defendant must show that racial considerations affected the sentencing process *in his case*." (Emphasis sic.) *Steffen*, 31 Ohio St.3d 111, 124, 509 N.E.2d 383 (1987), *cert. denied*, *Steffen v. Ohio*, 485 U.S. 916, 108 S.Ct. 1089, 99 L.Ed.2d 250 (1988).

{¶ 61} Accordingly, we find the trial court properly examined the circumstances of Sowell's individual case in assessing his constitutional challenges to the death penalty in Cuyahoga County and the related claims of ineffective assistance of counsel. Sowell's third assignment of error is without merit.

{¶ 62} Sowell's ineffective assistance of counsel claims are without merit. Accordingly, the trial court did not abuse its discretion in dismissing the fourth and sixth grounds for relief without a hearing.

### 4. Impeachment of Defense Witness Twyla Austin – Ground No. 7

{¶ 63} In his seventh ground for relief, Sowell argues his constitutional rights to due process and a fair trial were violated when the state elected to impeach defense witness, Twyla Austin.

{¶ 64} Austin, who is the mother of Sowell's child, testified on Sowell's behalf during the penalty phase of trial. Austin described the positive relationship she shared with Sowell and his family in an effort to provide insight into Sowell's young adulthood. Austin testified that she and her child lived with members of Sowell's family while he was serving in the Marine Corps. Austin expressed her opinion that Sowell was not the same person when he returned home from his military service. She stated that Sowell was quiet, often stayed in his bedroom, and developed a drug habit. During her cross-examination, Austin was questioned about her own drug activity. She maintained that she never had a drug problem. The state then impeached Austin by asking her if she had pleaded guilty to a drug offense in 1997. Over defense counsel's objection, Austin admitted that she had a prior conviction for "attempted possession of drugs."

{¶ 65} In his postconviction petition, Sowell argued the trial court erred in permitting the state to impeach Austin because evidence of her prior drug conviction

"should have been inadmissible since it did not meet the requirements for admissibility under Ohio Rule of Evidence 609."

**{¶ 66}** Evid.R. 609 governs the impeachment of a witness's credibility through the admission of evidence pertaining to a prior criminal conviction. Pursuant to Evid.R. 609(A)(1), evidence that a witness other than the accused has been convicted of a crime is admissible, subject to Evid.R. 403, if the crime was punishable by imprisonment in excess of one year pursuant to the law under which the witness was convicted.

**{¶ 67}** However, evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the latter of the date of conviction or completion of sentence. Evid.R. 609(B). There is an exception to this ten-year exclusion rule — the trial court must determine, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect, and the proponent gives the adverse party written notice of its intent to use the evidence. *Id. See also State v. Triplett*, 8th Dist. Cuyahoga No. 97522, 2012-Ohio-3804, ¶ 38, citing *State v. Shepherd*, 8th Dist. Cuyahoga No. 81926, 2003-Ohio-3356, ¶ 23 (if a conviction is more than ten years old, Evid.R. 609(B) requires a trial court to set forth "specific facts" on the record that reflect the facts and circumstances justifying the admission of the "stale" conviction).

**{¶ 68}** In support of his claim that the trial court improperly admitted testimony concerning Austin's prior conviction, Sowell attached a copy of the

common pleas docket in Austin's 1997 criminal case, marked petitioner's Exhibit C. The exhibit reflects that Austin pleaded guilty to a first-degree misdemeanor drug offense in August 1997, and was ordered to serve a suspended sentence of six-months in jail.

{¶ 69} In finding no merit to Sowell's seventh ground for relief, the trial court stated as follows:

> This claim is barred by res judicata because it is an evidentiary issue based exclusively on the record and was either raised or could have been raised of direct appeal. In addition, were this claim not barred by res judicata, it would be insufficient as a ground for relief as any error in the admission of this mitigation witness's prior drug conviction was harmless. In light of the jury's finding the defendant guilty of the murders of eleven woman during the initial phase of trial, defendant has failed to demonstrate any prejudice, during the mitigation phase, resulting from the admission of an ex-girlfriend's plea to a drug offense 14 years earlier.

{¶ 70} Having reviewed Austin's testimony in its entirety, we find an evidentiary challenge to the impeachment of Austin could not have been raised on direct appeal because the record does not contain sufficient information regarding Austin's criminal conviction. *State v. Menton*, 7th Dist. Mahoning No. 07MA70, 2009-Ohio-4640, ¶ 115-117 (finding on direct appeal that defendant's argument under Evid.R. 609 could not be reviewed because the record did not contain sufficient information about the details of the prior conviction.). Thus, the trial court improperly applied the doctrine of res judicata. With that said, however, we find the trial court accurately determined that the admission of Austin's prior

conviction was not prejudicial and, therefore, harmless in light of the remaining evidence adduced during the mitigation phase.  Crim.R. 52(A).

{¶ 71}  In this case, the admission of Austin's 1997 drug conviction did not comport with the requirements of Evid.R. 609.  However, viewing the penalty phase testimony collectively, we cannot say the evidentiary error contributed to Sowell's capital sentence.  As determined by the Ohio Supreme Court in Sowell's direct appeal, "the aggravating circumstances in this case are entitled to significant weight," while "the mitigating factors that are present, however, are entitled to modest, nominal, some, and little weight, respectively."  *Sowell,* 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, at ¶ 202.  Moreover, this court is not persuaded that the introduction of Austin's prior conviction necessarily negated the credibility of her testimony regarding the positive relationship she shared with Sowell and his family before he went to prison in 1990.  In fact, the trial court acknowledged that the testimony from Sowell's family, including Austin, was "entitled to some weight" in mitigation.  (Tr. 11624.)

{¶ 72}  Under the foregoing circumstances, we find the evidence attached to Sowell's postconviction petition failed to set forth sufficient operative facts to support Sowell's claim that the evidentiary error deprived him of due process and a fair trial.  The trial court did not abuse its discretion in denying Sowell's seventh ground for relief without a hearing.

### 5. Ineffective Assistance of Counsel during Penalty Phase — Ground Nos. 8-10[3]

**{¶ 73}** In his eighth, ninth, and tenth grounds for relief, Sowell argues that defense counsel rendered ineffective assistance of counsel during the penalty phase of trial. Sowell reiterates these ineffective assistance of counsel claims in his fourth assignment of error on appeal. He contends that the trial court's denial of his eighth and ninth grounds for relief improperly focused on the strength of the disputed mitigating evidence, as opposed to whether the evidence is relevant under R.C. 2929.04(B).

**{¶ 74}** The imposition of the death penalty requires that one of ten specific statutory factors is laid out in the indictment and proven beyond a reasonable doubt at trial. R.C. 2929.04(A). After one of the R.C. 2929.04(A) factors is found to have been proven beyond a reasonable doubt, the court or jury

> shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:
>
> (1) Whether the victim of the offense induced or facilitated it;
>
> (2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;
>
> (3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law;

---

[3] In resolving the eighth, ninth, and tenth grounds for relief, the trial court's analysis did not discuss the application of res judicata. Rather, the court focused on the merits of the claims and the sufficiency of the supporting exhibits.

(4) The youth of the offender;

(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

R.C. 2929.04(B).

{¶ 75} The existence of any mitigating factors does not preclude imposition of the death penalty. However, these factors shall be weighed against the aggravating factors. R.C. 2929.04(C).

{¶ 76} In this case, defense counsel's theory of mitigation pursued a comprehensive range of evidence that was intended to establish the presence of several mitigating factors. As referenced in the trial court's sentencing opinion, the defense introduced extensive testimony regarding Sowell's social history, character, and background. Specifically, Sowell presented testimony from family members, schoolteachers, social workers, employers, jail personnel, a military records expert, and a mitigation specialist in an effort to demonstrate that Sowell "had a troubled, unstable upbringing characterized by abuse, neglect and sexual abuse." *See Sowell,* 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, at ¶ 160-174. This testimony included allegations of sexual molestation and emotional abuse during Sowell's childhood.

**{¶ 77}** In addition, the defense presented expert testimony concerning Sowell's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. R.C. 2929.04(B)(3). In this regard,

> Dr. George Woods, a neuropsychiatrist, interviewed Sowell three times for a total of about six or seven hours and testified that Sowell lacked the substantial capacity to conform his conduct to the requirements of the law. Dr. Woods diagnosed Sowell with the following conditions: (1) obsessive-compulsive disorder ("OCD"), which Dr. Woods described as severe, chronic, and sexual in nature; (2) posttraumatic stress disorder ("PTSD") essentially consisting of two types, one resulting from "type-two trauma," a "chronic ongoing trauma" such as would result from "ongoing childhood abuse" and another from "type-one trauma," a single traumatic event such as a heart attack; (3) psychosis not otherwise specified; and (4) cognitive disorder not otherwise specified.

> Dr. Woods explained that childhood abuse causes anxiety, which leads to compulsive behavior stemming from a desire to control that anxiety. He described an obsessive-compulsive "cycle": obsessive thoughts lead to anxiety; anxiety leads to attempts to control the anxiety by means of compulsive behavior; compulsive behavior brings temporary relief, but then the anxiety returns. For OCD sufferers, "control is everything"; if the sufferer loses control, "the response is completely out of proportion to the stimulus." A structured setting helps the OCD sufferer control his compulsions, by reducing anxiety.

> Dr. Woods testified that Sowell performed well in the structured setting of the military; in civilian life after his discharge, he worked for a time, then his obsessions got the better of him and he was convicted of attempted rape. He then performed well in the structured environment of prison. After Sowell's release from prison, his work provided structure, and he was successful at his job, but after his heart attack, he lost his job. This removed the structure that, according to Dr. Woods, helped him control his obsessions. Depression impaired his ability to think.

> Dr. Woods also observed that OCD and PTSD "augment each other," creating "both atypical and more severe symptoms" than if only one disorder is present. PTSD can cause dysregulation, which is a tendency to overreact or underreact; Sowell's tendency was to overreact. If one

is dysregulated and at the same time is attempting to control anxiety, the resulting compulsive behavior can be "very terrible."

*Sowell* at ¶ 181-184. Similarly, Dr. Dale Watson, a clinical and forensic neuropsychologist, offered substantial testimony regarding Sowell's brain function. Dr. Watson opined that Sowell likely suffered "a neurological event" that resulted in a traumatic brain injury, impairing his cognitive function. (Tr. 9596-9598.) The Ohio Supreme Court summarized Dr. Watson's testimony as follows:

> Dr. Watson performed a comprehensive set of neuropsychological evaluations on Sowell, administering between 45 and 50 tests, including tests designed to detect malingering, over three sessions totaling 19 hours.
>
> Dr. Watson concluded that Sowell showed "probably * * * a moderate degree of [brain] dysfunction or impairment." Dr. Watson concluded that Sowell had "had some sort of neurological event that affected his processing speed." He noted that "a heart attack where there's not adequate oxygenation" could "impact brain function." Dr. Watson further concluded that Sowell's results did not indicate malingering.
>
> Dr. Watson testified that Sowell claimed that after his heart attack, he had auditory hallucinations. Specifically, Sowell reported hearing a voice, which he called "Arnie." However, when Dr. Watson raised this subject again, Sowell denied having had such hallucinations. Dr. Watson believed Sowell's initial claim and questioned his later denial.

*Id.* at 175-177.

{¶ 78} Within his eighth, ninth, and tenth grounds for relief, Sowell suggests that the investigation, preparation, and presentation, of the foregoing mitigation evidence was inadequate and, therefore, prejudicial. We address each mitigation argument separately.

## a. PET Scan

{¶ 79} In his eighth ground for relief, Sowell argues defense counsel rendered ineffective assistance of counsel by failing to obtain a Positron Emission Tomograph scan ("PET scan") prior to trial. Sowell contends that the PET scan, which the trial court had approved requested funding to obtain, was "necessary" for a "true understanding of [his] neuropsychiatric strengths and weaknesses." Thus, Sowell asserts that counsel's failure to obtain the brain scan was unreasonable and prejudicial. In explaining the prejudicial scope of counsel's inaction, Sowell states:

> Petitioner was prejudiced by counsel's failure to obtain brain scans to corroborate the possibility of an organic inability to regulate his actions. A PET scan of Petitioner's brain would have given the jury some explanation for his violent behavior. Counsel's major mitigation theme suggested a brain impairment caused by a cardiac event. It is inexcusable not to obtain scans that would have lent credence to that theory. An image of Petitioner's brain would have undoubtedly been persuasive evidence to show the jury.

{¶ 80} In support of this ineffective assistance of counsel claim, Sowell attached affidavits from private investigator, Rebecca Ohler, and lead defense counsel, John P. Parker. In relevant part, Investigator Ohler made the following averments:

> I feel that the funding and preparation time that we received in this case were completely inadequate and contrary to what is necessary under U.S. Supreme Court case law and the ABA Guidelines. As a team, we spent a lot of our time trying to get more time and more funding to continue investigating and to prepare a mitigation theory.
>
> * * *
>
> Trial counsel ran out of time to get a brain scan completed. Dr. George Woods had advised us that he needed the data from imaging to inform his conclusions.

Similarly, defense counsel Parker averred, in relevant part:

> I was responsible for obtaining the brain scan but ran out of time. I was scrambling to get the details finalized to have the scan performed and read by an appropriate expert (Dr. Ruben Gur). In April 2011, I had another aggravated murder trial. This was a non-capital case, although it was indicted as a capital case and the death penalty specifications were removed. [The trial court] would not continue the pretrial because I was in trial, and would not continue Sowell's case because I spent 2-3 weeks in trial on this other case * * *. Had I more time, I am confident that I would have obtained the appropriate brain scan.

{¶ 81} In determining that Sowell failed to set forth a cognizable claim of ineffective assistance of counsel, the trial court found that the decision to forego the PET scan was an "appropriate trial strategy * * * given the expert testimony that was presented at trial."

{¶ 82} On appeal, Sowell reiterates his position that defense counsel's failure to acquire a PET scan of his brain precluded the trier of fact from considering persuasive, mitigating evidence.

{¶ 83} Generally, the presentation of mitigating evidence is a matter of trial strategy. *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 189, citing *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 74. In many criminal cases, the decision not to seek expert testimony "'is unquestionably tactical because such an expert might uncover evidence that further inculpates the defendant.'" *State v. Krzywkowski,* 8th Dist. Cuyahoga Nos. 83599, 83842, and 84056, 2004-Ohio-5966, ¶ 22, quoting *State v. Glover*, 12th Dist. Clermont No. CA2001-12-102, 2002-Ohio-6392, ¶ 95.

{¶ 84} Defense counsel has a duty to investigate mitigating circumstances in order to make informed tactical decisions about which information would be most helpful to a client's case. *State v. Jackson*, 10th Dist. Franklin No. 01AP-808, 2002-Ohio-3330, ¶ 84, citing *State v. Johnson*, 24 Ohio St.3d 87, 90, 494 N.E.2d 1061 (1986). However, out-of-record evidence that is merely cumulative of, or alternative to, other mitigation evidence defense counsel presented does not provide substantive grounds for a claim of ineffective assistance of counsel at mitigation. *Combs*, 100 Ohio App.3d 90, at 98, 652 N.E.2d 205. In Ohio, it is within the purview of counsel to determine whether additional expert testimony or other information regarding a defendant's background is cumulative in nature. *State v. Cunningham*, 3d Dist. Allen No. 1-04-19, 2004-Ohio-5892, ¶ 38, citing *State v. Yarbrough*, 3d Dist. Shelby No. 17-2000-10, 2001-Ohio-2351. To demonstrate prejudice, a petitioner must show not only that there was mitigating evidence that counsel failed to present, but also that "there is a reasonable probability that the evidence would have swayed the jury to impose [a lesser sentence]." *State v. Keith,* 79 Ohio St.3d 514, 536, 684 N.E.2d 47 (1997), *cert. denied, Keith v. Ohio*, 523 U.S. 1063, 118 S. Ct. 1393, 140 L. Ed.2d 652 (1998).

{¶ 85} In this case, the affidavits attached in support of the eighth ground for relief attempt to explain the significance of the PET scan and the circumstances that led to defense counsel's failure to secure the images prior to the penalty phase of trial. Because the evidence, particularly lead counsel's affidavit, set forth

information that was outside the record and not available for Sowell's direct appeal, we are unable to conclude that this claim was barred by res judicata.[4]

{¶ 86} Nevertheless, we find the trial court did not abuse its discretion in determining that Sowell failed to present sufficient evidence to enable the court to conclude that defense counsel rendered ineffective assistance of counsel by foregoing a PET scan of Sowell's brain. We recognize that lead counsel states in his affidavit that the decision to forego the brain imaging was not the product of trial strategy. Rather, lead counsel states that he simply "ran out of time" to obtain the appropriate brain scan. Even accepting these averments as true and accurate statements, we are unable to conclude that the trial court abused its discretion in finding no cognizable claim of prejudice.

{¶ 87} In this case, defense expert, Dr. Watson, was specifically questioned about the relevance of the disputed brain imaging during his cross-examination. Dr. Watson testified that a PET scan would be relevant to corroborate his "battery of neuropsychological tests," but explained that behavioral techniques are more valuable when assessing how brain dysfunction affects behavior. (Tr. 9656.) Similarly, defense expert, Dr. Woods, testified that obtaining a PET scan of Sowell's brain "was not a top priority given Dr. Watson's neuropsychological testing, because neuropsychological testing is really the * * * standards of neuropsychological functioning * * *." (Tr. 10676.) Such testimony is inconsistent with Investigator

---

[4] The affidavit of lead counsel provides further insight into the factors supporting Sowell's claim that counsel was ineffective for failing to obtain the PET scan than that discussed in open court during pretrial proceedings. (Tr. 922.)

Ohler's averments concerning the information necessary to the formation of Dr. Woods's expert conclusions.

{¶ 88} Under these circumstances, images of Sowell's brain, at most, would have been cumulative to the extensive expert testimony provided by Drs. Watson and Woods regarding Sowell's brain functioning. *State v. Johnson*, 2d Dist. Montgomery No. 16803, 1998 Ohio App. LEXIS 3592, 19 (Aug. 7, 1998) ("Failure to put on cumulative evidence is not indicative of ineffective assistance of counsel."), citing *Combs*, 100 Ohio App.3d at 105, 652 N.E.2d 205 (1st Dist.1994); *Jackson*, 8th Dist. Cuyahoga No. 104132, 2017-Ohio-2651, at ¶ 42. *See also Forrest v. Steele*, W.D.Mo. No. 09-8002-CV-W-ODS, 2012 U.S. Dist. LEXIS 66304, 4 (May 11, 2012) ("The PET scan would have confirmed the experts' testimony, but would not have added anything to it."); *Walls v. McNeil*, N.D.Fla. No. 3:06cv237/MCR, 2009 U.S. Dist. LEXIS 95764, 32—33 (Sept. 30, 2009) (denying ineffective claim based on failure to conduct PET scan where "any results that the PET scan might have revealed were already presented to the jury by the defense experts," including testimony suggesting that defendant had "significant neuropsychological deficits"). As stated, there was extensive expert testimony presented at trial regarding defense counsel's position that Sowell's brain dysfunction and cognitive impairments prevented him from conforming his conduct to the requirements of law. Images of Sowell's brain could have only corroborated such testimony, and therefore, would not have overcome the significant aggravating factors present in this case. Thus, we find no merit to Sowell's contention that the trial court erred in referencing the

evidentiary value of the requested PET scan. Given the aggravated nature of Sowell's crimes in this case, we are unable to conclude that there is a reasonable probability that the PET scan images would have swayed the jury to impose a lesser sentence.

### b. Forensic Psychologist

{¶ 89} In his ninth ground for relief, Sowell argues defense counsel rendered ineffective assistance of counsel by failing to "hire a forensic psychologist with expertise in mitigation evaluations." Sowell contends that a forensic psychologist would have provided testimony regarding "substantial mitigating factors" that were not developed at trial.

{¶ 90} In support of this ineffective assistance of counsel claim, Sowell attached the affidavit of forensic psychologist, Dr. Bob Stinson, Psy.D., J.D., A.B.P.P.; and the expert report of Dr. Howard Fradkin, Ph.D., L.I.C.D.C.

{¶ 91} In his affidavit, Dr. Stinson opined that Sowell's experts failed to "perform and complete a thorough mitigation evaluation." Specifically, Dr. Stinson stated that the shortfalls of the experts' evaluation

> resulted in a failure to fully develop and present what was arguably the most relevant and persuasive mitigation available: Anthony's extensive history of trauma (which began in early childhood and included emotional, physical, and sexual abuse; neglect; and exposure to violence), which contributed to the development of depression and multiple substance dependence. The trauma history, depression, and multiple substance dependence were intimately related to the underlying offenses.

{¶ 92} Based on his review of all relevant records and his own evaluation of Sowell, Dr. Stinson concluded, in part, as follows:

It is my opinion, given a reasonable degree of psychological certainty, that Anthony Sowell was traumatized in his childhood, he experienced re-traumatization through various relationships, he developed a recurrent depressive disorder, he initially attempted to cope effectively but he ultimately turned to drugs and alcohol — becoming addicted to both in maladaptive attempts to cope, and it was while under the heavy influence of drugs and alcohol and when triggered by flashbacks to his traumatization that he offended.

It is further my professional opinion that without the presentation of the information identified in this affidavit, the trier of fact was deprived of the opportunity to fully consider the history, character, and background of Anthony Sowell in weighing the mitigating factors against the aggravating circumstances.
* * *

It is my professional opinion * * * that there were substantial mitigating factors that were not discovered or testified to at Anthony's trial. Those mitigating factors would have been based on a psychological mitigation evaluation of Anthony and an application of the relevant scientific literature, which is * * * an area of expertise that is distinguishable from the types of expertise Dr. Woods and Dr. Watson proclaim. Had a forensic psychologist with expertise in mitigation evaluations evaluated Anthony and testified at his trial, the jury could have heard and weighed those mitigating factors. Because a forensic psychologist with expertise in mitigation evaluations (as opposed to neuro evaluations) did not evaluate Anthony or testify at his trial, the jury was deprived of the opportunity to consider and give weight to those mitigating factors.

{¶ 93} Dr. Fradkin's report reflects that it was created in an attempt to provide the court with additional mitigating facts to "put into clearer context the psycho-emotional background for the heinous crimes [Sowell] committed." Dr. Fradkin's report summarizes the information he gathered from Sowell following a two-hour interview performed in August 2012. The report provides details of Sowell's background, including specific instances of emotional abuse, physical abuse, childhood sexual abuse, depression, rejection, betrayal, and parental neglect.

{¶ 94} In rejecting Sowell's ineffective assistance claim, the trial court found that "counsel's decision not to hire an additional forensic psychologist was not deficient performance where the mental experts that were retained were both qualified to testify in a forensic setting." The court further found that "there was extensive testimony about the mitigating factors defendant now claims should have been further developed." The court's analysis did not rely on the doctrine of res judicata.

{¶ 95} After careful consideration, we find the trial court did not abuse its discretion in determining that Sowell's ineffective assistance of counsel claim is unsupported by the record. In this case, defense counsel made the strategic decision to focus its presentation of mitigating factors on expert testimony concerning Sowell's perceived mental-health disorders and impaired brain function. Drs. Watson and Woods each carefully described the nature of their evaluations and explained the impact Sowell's diagnoses would have on his capacity to conform his conduct to the requirements of the law. Because the presentation of mitigating evidence is a matter of trial strategy, "the decision to forgo the presentation of additional mitigating evidence does not itself constitute proof of ineffective assistance of counsel." *Keith*, 79 Ohio St.3d at 536, 684 N.E.2d 47.

{¶ 96} While the opinions of Drs. Stinson and Fradkin have "the benefit of perfect hindsight, the distorting effect of which must be avoided," Sowell provides no sound rationale to conclude that defense counsel's mitigation strategy was unreasonable. *State v. Post,* 32 Ohio St.3d 380, 388, 513 N.E.2d 754 (1987), *cert.*

*denied, Post v. Ohio*, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988). "[D]efendants are not entitled to perfect mitigation hearings." *State v. Landrum*, 4th Dist. Ross No. 98 CA 2401, 1999 Ohio App. LEXIS 71, 41 (Jan. 11, 1999). "When, as here, counsel has presented a meaningful concept of mitigation, the existence of alternate or additional mitigation theories does not establish ineffective assistance." *Combs*, 100 Ohio App.3d at 105, 652 N.E.2d 205 (1st Dist.1994).

{¶ 97} Finally, the evidentiary materials attached in support of Sowell's ineffective assistance of counsel claim do not set forth sufficient operative facts showing that Sowell was prejudiced by trial counsel's mitigation strategy. In this case, the defense presented significant evidence of Sowell's social history, including testimony from defendant's mitigation expert, Dr. Lori James-Towns, regarding Sowell's depression and reports of emotional, physical, and sexual abuse as a child. While further or alternative expert testimony regarding Sowell's past trauma may have been relevant, Sowell has not demonstrated that there is a reasonable probability that further expert evaluation would have resulted in a lesser sentence. As noted by the Ohio Supreme Court, courts have "'seldom given decisive weight to' a defendant's unstable or troubled childhood." *Sowell,* 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, at ¶ 198, quoting *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 245. Likewise, depression and substance abuse have routinely been characterized as weak mitigating factors that are entitled to modest weight under R.C. 2929.04(B). *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 138 (defendant's severe depression was a weak

mitigating factor); *State v. Slagle*, 65 Ohio St.3d 597, 614, 605 N.E.2d 916 (1992) ("mere alcoholism or other addictions, voluntary drunkenness and drug use are not mitigating factors."); *State v. Goff*, 82 Ohio St.3d 123, 143, 694 N.E.2d 916 (1998) ("[W]e give little weight to defendant's voluntary substance abuse.").

{¶ 98} Based on the foregoing, we find the trial court did not abuse its discretion in discounting the credibility of the affidavit and expert report submitted in support of his ninth ground for relief.

### c. Retention and Supervision of Defense Experts

{¶ 99} In his tenth ground for relief, Sowell argues defense counsel rendered ineffective assistance of counsel by failing to retain appropriate experts and by failing to properly oversee the mitigation investigation and presentation. Sowell contends that defense counsel bears responsibility for the performance of the hired investigators who, in Sowell's view, failed to complete an "adequate" investigation into "important mitigating factors." Sowell further suggests that counsel did not adequately prepare the defense witnesses, as evidenced by counsel's failure to advise Sowell's sister, Tressa Garrison, to not discuss Sowell's prior rape conviction.

{¶ 100} In support of his claims, Sowell relies on the affidavits of Dr. Stinson, Dr. Fradkin, and Investigator Ohler. In relevant part, Investigator Ohler averred that (1) the funding and preparation time needed in this case were completely inadequate to investigate and prepare a mitigation theory, (2) she was not able to complete an adequate investigation to present an effective mitigation theory, (3) she did not have the opportunity to interview Sowell before trial, (4) she was unable to

fully explore the sexual abuse committed against Sowell as a young child, (5) she was unable to adequately investigate Sowell's prior conviction, and (6) she was not guided by defense counsel on how to prioritize investigation.

{¶ 101} The trial court found Sowell's claim to be unsupported by the record, stating:

> There was sufficient evidence presented to the jury to make a recommendation to the court as to whether or not the death penalty should be imposed. The suggestion that had there been more time and different evidence presented, the result would have been different is a fiction based on unsupported speculation.

The court further denied Sowell's claim regarding defense counsel's preparation of witness, finding no prejudice. Significantly, the trial court's assessment of this ground for relief did not apply the doctrine of res judicata.

{¶ 102} In a capital case, "[d]efense counsel has a duty to investigate the circumstances of his client's case and explore all matters relevant to the merits of the case and the penalty, including the defendant's background, education, employment record, mental and emotional stability, and family relationships." *State v. Pickens,* 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 219, quoting *Goodwin v. Johnson,* 632 F.3d 301, 318 (6th Cir.2011). Counsel's "investigations into mitigating evidence 'should comprise efforts to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor.'" *Wiggins v. Smith,* 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), citing ABA Guidelines for the *Appointment and Performance of Counsel in Death Penalty Cases* 11.4.1(C), p. 93 (1989). "An

attorney's failure to reasonably investigate the defendant's background and present mitigating evidence to the jury at sentencing can constitute ineffective assistance of counsel." *Pickens* at *id.*, citing *Wiggins* at 521-522. The burden of demonstrating that counsel rendered ineffective assistance by failing to conduct an adequate investigation is placed on the petitioner. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 104, citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 103} The Supreme Court of Ohio has specifically recognized that "'the finding as to whether counsel was adequately prepared does not revolve solely around the amount of time counsel spends on the case or the numbers of days which he or she spends preparing for mitigation. Instead, this must be a case-by-case analysis.'" *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 227, quoting *State v. Lewis*, 838 So.2d 1102, 1114, (Fla.2002), fn. 9.

{¶ 104} After careful consideration of the record and the evidence attached to Sowell's petition, we find Sowell's ineffective assistance of counsel claim is unsupported by the record. Here, defense counsel hired highly qualified and experienced mitigation investigators, who were afforded substantial funding and multiple continuances to complete an appropriate mitigation investigation. While the evidence submitted in support of Sowell's ineffective assistance of counsel claim describe certain obstacles that were confronted by the investigators in this case, Sowell has failed to demonstrate that counsel's oversight of the mitigation investigation fell below an objective standard of reasonableness. Based on the

information contained in the record, the trial court did not abuse its discretion in affording little weight to Investigator Ohler's characterization of the mitigation investigation.

{¶ 105} Regarding Sowell's brief reference to counsel's alleged failure to retain "appropriate experts," we reiterate that the decision of what mitigating evidence to present during the penalty phase of a capital trial is a matter of trial strategy. *Keith*, 79 Ohio St.3d at 530, 684 N.E.2d 47. While Sowell disparages defense counsel's decision to predicate the theory of mitigation on Sowell's mental health and brain dysfunction, the existence of alternative or additional mitigation theories generally does not establish ineffective assistance of counsel. *Combs,* 100 Ohio App.3d at 105, 652 N.E.2d 205 (1st Dist.1994); *State v. Cornwell*, 7th Dist. Mahoning No. 00-CA-217, 2002-Ohio-5177, ¶ 46; *State v. Roseborough*, 5th Dist. Ashland Nos. 09 COA 003 and 09 COA 004, 2010-Ohio-1832, ¶ 17; *State v. Turner*, 10th Dist. Franklin No. 04AP-1143, 2006-Ohio-761, ¶ 35; *State v. Tenace*, 6th Dist. Lucas No. L-05-1041, 2006-Ohio-1226, ¶ 26 ("The mere existence of an alternative theory of defense, however, is insufficient to establish ineffective assistance of counsel.").

{¶ 106} Finally, we agree with the trial court that Sowell was not prejudiced by counsel's alleged failure to adequately prepare the defense witnesses. While Sowell's sister, Tressa Garrison, referenced Sowell's prior rape conviction during her cross-examination, the record reflects that the trial court sustained defense counsel's objection to the state's attempt to question Garrison about the details of

the prior conviction. Her testimony was limited and not prejudicial given the overwhelming nature of the aggravating circumstances in this case.

{¶ 107} Based on the foregoing, we find the trial court did not abuse its discretion in denying Sowell's eighth, ninth, and tenth grounds for relief. Sowell failed to meet his burden to show substantive grounds for relief which would entitle him to a hearing.

### 6. Ineffective Assistance of Co-Counsel – Ground No. 11

{¶ 108} Sowell argues in his eleventh ground for relief that he received ineffective assistance of counsel "because trial co-counsel was uninvolved in the litigation and was wholly unprepared." Sowell asserts that co-counsel's deficient performance impaired the representation of lead counsel and prevented the jury from gaining a complete and proper understanding of all mitigating evidence. Specifically, Sowell maintains that co-counsel's lack of involvement contributed to lead counsel's failure to obtain a PET scan prior to trial, and prevented lead counsel from adequately investigating Sowell's family and social history.

{¶ 109} In support of his claim, Sowell attached affidavits from five individuals who were part of his defense team, including Dr. George Woods, Investigator Rebecca Ohler, paralegal Ashley Ciresi, forensic analyst Linda Luke, and lead counsel John Parker. Collectively, the defense team averred that co-counsel (1) was unfamiliar with the mitigation theory in this case, (2) did not participate in the preparation and investigation of the mitigation theory, (3) was unfamiliar with the defense witnesses, (4) was unfamiliar with the extensive

discovery provided by the state, (5) was unprepared for trial, and (6) did not significantly discuss the case before trial with the defense experts, investigators, or paralegal.

{¶ 110} The trial court found Sowell's ineffective assistance of counsel claim was "unsupported by the record," stating, in relevant part:

> Throughout the case, the court granted multiple requests by defense counsel for the funding of paralegals, interns, investigators and experts to assist with the preparation of the case for trial. The court was never made aware of any impairment of co-counsel that was affecting trial preparations. * * * According to an August 18, 2011, fee bill submitted by co-counsel, he devoted 602.3 hours working on defendant's case. This alone would be considered constitutionally adequate under the standards annunciated in *Strickland, supra*. In addition, co-counsel's name and signature appeared on numerous court filings, indicating that he was intimately involved in the preparation of the case for trial.

{¶ 111} On appeal, Sowell asserts in his second assignment of error that the trial court's reliance on co-counsel's signature on court filings and the number of hours allegedly devoted by co-counsel was misplaced, and "flies in the face of observations made under oath" by individuals involved in Sowell's defense. Sowell contends that "at the very least, the information appended to the petition for post-conviction relief warranted an evidentiary hearing to determine what [co-counsel] did or did not do, what specific effect his lack of participation and preparation had on the investigation, preparation, and presentation of every phase of the case."

{¶ 112} Within his eleventh ground for relief, Sowell attempts to raise a constitutional claim that pertains to the performance of one particular member of his legal defense. However, when considering an ineffective assistance of counsel

claim based upon the rights afforded by the constitution, the resolution of whether a defendant was afforded competent legal representation must contemplate the complete legal services provided by the defense team representing him. As noted by the United States Supreme Court, "the object of an ineffectiveness claim is not to grade counsel's performance." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674. Rather, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

{¶ 113} On appeal, Sowell's ineffective assistance of counsel claim concedes that the crux of the case from the defense perspective was the "development, investigation, and presentation of the * * * mitigation theory." Contrary to Sowell's characterization of his mitigation evidence as "grossly inadequate and lacking," we find the mitigation evidence presented on Sowell's behalf was thorough and comprehensive. As noted by the trial court, "[Sowell's] mitigation presentation involved 24 witnesses and more than a week of trial time." The trier of fact was provided with testimony from a neuropsychologist, a neuropsychiatrist, a social worker, a military records expert, and individuals familiar with Sowell, including his sixth-grade teacher, his coworkers, a jail Chaplain, and several family members. The information provided the trier of fact with an understanding of Sowell's medical history, educational history, employment history, family and social history, and other relevant inferences, including his past trauma and his capacity to conform his conduct to the requirements of the law.

{¶ 114} Viewing the transcript of the proceedings in its entirety, we are unable to conclude that Sowell was deprived of effective assistance of counsel. While the Ohio Supreme Court found the aggravating circumstances far outweighed the paucity of the mitigating factors, there is nothing beyond speculation to suggest that the performance of lead and co-counsel contributed to this determination.

{¶ 115} Moreover, even if this court were to scrutinize co-counsel's individual contributions to Sowell's defense throughout the entire trial, we agree with the trial court that the record does not support Sowell's allegations of deficient performance. In this case, co-counsel indicated that he had devoted 602.3 hours working on Sowell's defense, including 313 hours that were spent working outside the courtroom. In addition, there is no dispute that co-counsel's signature appears on the pleadings and various filings submitted in this case. Co-counsel was responsible for the cross-examination of numerous state witnesses during the guilt phase, and conducted the direct examination of several defense witnesses during the penalty phase. Finally, co-counsel argued on behalf of Sowell's motion for new trial, setting forth arguments relating to potential juror bias. Co-counsel's participation in the trial proceedings, is therefore, supported by the record. While the affidavits attached to Sowell's petition raise vague concerns with the quality of co-counsel's participation and preparation, they fail to articulate that co-counsel's performance deprived Sowell of a constitutionally guaranteed right to a fundamentally fair trial. Accordingly, the trial court did not err in affording the affidavits minimal weight.

{¶ 116} Based on the foregoing, we find the trial court did not abuse its discretion in determining that Sowell's eleventh ground for relief was unsupported by the record.

{¶ 117} Sowell's first, second, third, and fourth assignments of error are overruled.

### C. Motion for Further Discovery and Expert Funds

{¶ 118} In his fifth assignment of error, Sowell argues the trial court committed reversible error by failing to allow discovery and the appropriation of funds to complete testing the court had previously allowed but defense counsel failed to undertake.

{¶ 119} In August 2012, Sowell filed contemporaneous motions, requesting leave to conduct further discovery in support of his petition for postconviction relief, and funds to complete a PET scan. Sowell argued that leave to conduct additional discovery was appropriate "because Petitioner's petition alleges substantive grounds for relief that entitle him to a hearing" and, therefore, "should be granted discovery to assist in preparing for the hearing." In addition, Sowell reiterated his position that funding to complete a PET scan was necessary to ensure his constitutional right to present mitigating evidence in favor of a sentence less than death. Although the trial court denied the petition without ruling on the pending motions, they are deemed denied. *State ex rel. Harris v. Sutula*, 8th Dist. Cuyahoga No. 107662, 2018-Ohio-5045, ¶ 11; *State v. Duncan*, 8th Dist. Cuyahoga No. 97208, 2012-Ohio-3683, ¶ 4.

{¶ 120} The long-standing rule in Ohio has been that a convicted criminal defendant has no right to additional or new discovery during postconviction relief proceedings. *See State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office*, 87 Ohio St.3d 158, 159, 718 N.E.2d 426 (1999). *See also State v. Bryan*, 8th Dist. Cuyahoga No. 93038, 2010-Ohio-2088, ¶ 45; *State v. Taylor*, 8th Dist. Cuyahoga No. 80271, 2002-Ohio-2742, ¶ 19 (Courts are not required to provide petitioners discovery in postconviction proceedings.). However, we recognize that R.C. 2953.21(A)(1)(d), effective on April 6, 2017, now confers upon a common pleas court the discretion to permit certain kinds of discovery by a capital petitioner upon "good cause shown."

{¶ 121} At the time Sowell filed his postconviction petition in this case, the postconviction statutes did not contemplate discovery in the initial stages of a postconviction proceeding.[5] Nevertheless, even if this court were to apply the new provisions of the statute to this case, we find no basis to conclude that good cause was shown. Here, Sowell submitted 379 pages worth of evidence in support of his petition for postconviction relief. Thus, it is not clear from this record that Sowell was hampered in any way by the court's failure to allow him to conduct additional discovery. In fact, Sowell emphatically argued in his August 13, 2012 motion for discovery that the evidence and materials attached in support of his petition, standing alone, were sufficient to establish substantive grounds for relief on his

_____

[5] The discretion afforded to trial courts under R.C. 2953.21(A)(1)(d) arises "at any time in conjunction with the filing of a petition for postconviction relief under Division (A) by a person who has been sentenced to death[.]" Sowell's petition was filed on August 12, 2012, well before the amendments' effective date.

claims.  Under these circumstances, we are unable to conclude that the trial court abused its discretion by failing to allow Sowell to conduct further discovery.  *See State v. Obermiller*, 8th Dist. Cuyahoga No. 101456, 2019-Ohio-1234, ¶ 16 (declining to follow *State v. Ketterer*, 2017-Ohio-4117, 92 N.E.3d 21 (12th Dist.)).

{¶ 122} Moreover, "Ohio appellate courts have consistently held that the postconviction relief statute does not provide a right to funding or appointment of expert witnesses or assistance in a postconviction petition." *State v. Rutherford*, 4th Dist. Pike No. 18CA894, 2019-Ohio-3827, ¶ 28, citing *State v. Hicks*, 4th Dist. Highland No. 09CA15, 2010-Ohio-89, ¶ 22 (petitioner sought funding for a handwriting examiner, a linguist, and an investigator, but R.C. 2953.21 does not provide a right to funding or appointment of expert witnesses or assistance in a postconviction petition); *State v. Madison*, 10th Dist. Franklin No. 08AP-246, 2008-Ohio-5223, ¶ 16 (R.C. 2953.21 does not provide a right to funding or appointment of expert witnesses or assistance in a postconviction petition), citing *State v. Tolliver*, 10th Dist. Franklin No. 04AP-591, 2005-Ohio-989, ¶ 25 (Neither the postconviction statute nor the constitution warrants funding for a psychiatrist or other expert assistance to testify regarding suicide in a postconviction petition.). *See also Jackson*, 8th Dist. Cuyahoga No. 104132, 2017-Ohio-2651, at ¶ 12 (noting that there is no constitutional or statutory right to funding of an expert in aid of a postconviction petition).

{¶ 123} We recognize that Crim.R. 42, effective July 1, 2017, now provides trial courts with discretion to appoint experts for indigent defendants in

postconviction reviews of capital cases. *State v. Powell*, 6th Dist. Lucas Nos. L-18-1194 and L-18-1195, 2019-Ohio-4286, ¶ 48; *State v. Kinley*, 2d Dist. Clark No. 2016-CA-11, 2018-Ohio-2423, ¶ 34 (noting "the rule does not expressly state whether it is to be applied retroactively."). However, as set forth in our resolution of Sowell's eighth ground for relief, the trial court correctly found that Sowell's own experts testified during the mitigation phase of trial that a PET scan would merely corroborate the results gathered from the neuropsychological testing that Sowell had undergone. Given the cumulative nature of the requested testing, we are unable to conclude that the trial court abused its discretion by failing to grant Sowell's request for additional funding.

{¶ 124} Sowell's fifth assignment of error is overruled.

### D. Postconviction Provides a Meaningful Review

{¶ 125} In his sixth assignment of error, Sowell argues his claims for postconviction relief presented sufficient operative facts to merit relief or, at a minimum, an evidentiary hearing. Sowell contends that he supported his petition with evidence outside the record, yet the trial court denied each claim "without substantive analysis" and without making an effort to "engage with the claims or meaningfully review the case in light of the grounds alleged and the evidence presented." Sowell further contends that, "in practice, Ohio's postconviction process allows little, if any, opportunity for factual development, so it has largely become an empty and circular remedy." Thus, Sowell asserts that "Ohio's postconviction procedures under R.C. 2953.21 et seq., [unconstitutionally] fail to provide an

individual with any meaningful opportunity to redress his or her wrongful convictions."

{¶ 126} As an initial matter, we reiterate that postconviction review is a statutory process and is not a constitutional right. *State v. Workman*, 3d Dist. Auglaize No. 2-17-12, 2017-Ohio-7364, ¶ 17, citing *State v. Keith*, 176 Ohio App.3d 260, 2008-Ohio-741, 891 N.E.2d 1191, ¶ 26 (3d Dist.). The Supreme Court left the states "free to impose proper procedural bars to restrict repeated returns to state court for postconviction proceedings." *Slack v. McDaniel*, 529 U.S. 473, 489, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). The Ohio General Assembly has done so, by limiting the time for asserting a postconviction claim, by restricting the jurisdiction of a court to entertain late or successive claims, and setting forth the requirements for an evidentiary hearing. "[A] petitioner receives no more rights than those granted by the statute." *Calhoun*, 86 Ohio St.3d at 281, 714 N.E.2d 905.

{¶ 127} As stated, a petitioner seeking postconviction relief under R.C. 2953.21 is not automatically entitled to an evidentiary hearing. *Id.* at 282. A trial court does not abuse its discretion in dismissing a petition for postconviction relief without a hearing where (1) the petitioner fails to set out sufficient operative facts to establish substantive grounds for relief, or (2) the operation of res judicata prohibits the claims advanced in the petition. *Jackson*, 8th Dist. Cuyahoga No. 104132, 2017-Ohio-2651, at ¶ 16. While Sowell contends that he pled "sufficient operative facts to warrant a hearing," we find the trial court carefully and meticulously considered the evidence attached in support of Sowell's postconviction petition and properly

determined that Sowell's constitutional claims were either barred by res judicata or failed to set forth sufficient operative facts to establish substantive grounds for relief. In this case, the trial court's 32-page findings of fact and conclusions of law was explicit enough to sufficiently apprise the petitioner with a clear understanding of the basis of the trial court's decision, while simultaneously enabling this court to review the grounds on which the trial court reached its decision.

{¶ 128} Under these circumstances, we are unable to conclude that the trial court denied Sowell's claims without substantive analysis and abused its discretion in denying Sowell's claims without holding an evidentiary hearing. Similarly, we find no merit to Sowell's position that R.C. 2953.21 et seq., violates a petitioner's right to due process and meaningful review. *See Obermiller*, 8th Dist. Cuyahoga No. 101456, 2019-Ohio-1234, at ¶ 15 (rejecting the claim that postconviction proceedings fail to provide meaningful review because they allow for little opportunity for factual development), citing *State v. Hutton*, 8th Dist. Cuyahoga No. 76348, 2004-Ohio-3731, ¶ 25-26 ("Notwithstanding the narrow focus of the postconviction review under R.C. 2953.21, we believe this remedy provides adequate safeguards to protect the constitutional rights of individuals convicted of a criminal offense.").

{¶ 129} Sowell's sixth assignment of error is overruled.

{¶ 130} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

PATRICIA ANN BLACKMON, J., and
LARRY A. JONES, SR., J., CONCUR